UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

DEBRA WHIPPS ROBINSON                                                              PLAINTIFF

VS.                                                   CIVIL ACTION NO. 3:08cv135-DPJ-FKB

JACKSON PUBLIC SCHOOL DISTRICT, ET AL.                                DEFENDANTS

## ORDER

This civil-rights case is before the Court on Defendants' Motion for Summary Judgment
[34] and Plaintiff's Motion to Strike [41] certain record evidence.  The Court, having fully
considered the parties' submissions and the applicable law, finds that the Motion for Summary
Judgment should be granted in part and denied in part and the Motion to Strike should be denied.

I.       Facts/Procedural History

Plaintiff Debra Whipps Robinson began work for Defendant Jackson Public Schools
(JPS) in October 1999 as the Officer Manager in the Safety and Security Department.  Her
immediate supervisor was Defendant John Coleman.  According to Robinson, Coleman created a
hostile working environment within the department by calling women employees "bitches" and
"whores" and by frequently and graphically describing sex acts he would like to perform on
them.  Coleman's alleged conduct eventually led one of Robinson's female co-workers, Sonia
Carter, to file a complaint with the Equal Employment Opportunity Commission.  Robinson
cooperated with the investigation.

JPS's internal investigation of Carter's claims appears to have concluded in January
2005.  That same month, JPS added Robinson—along with all other members of her
department—to a list of eligible employees for drug testing (Random Test List).  Robinson was

then selected for testing and tested positive on March 2, 2005.  JPS terminated her employment

on March 10, 2005.

On February 29, 2008, Robinson sued JPS and Coleman under 42 U.S.C. § 1983 for

alleged violation of her right to equal protection under the Fourteenth Amendment.  She

specifically claimed that Defendants subjected her to a hostile working environment, retaliated

against her for complaining of the alleged harassment, and discriminated against her based on

her sex.  Federal question jurisdiction exists, the issues are fully briefed, and the Court is

prepared to rule.

II.     Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil

Procedure when evidence reveals no genuine dispute regarding any material fact and that the

moving party is entitled to judgment as a matter of law. The rule "mandates the entry of

summary judgment, after adequate time for discovery and upon motion, against a party who fails

to make a sufficient showing to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility for informing the

district court of the basis for its motion and identifying those portions of the record it believes

demonstrate the absence of a genuine issue of material fact.  *Id.* at 323.  The non-moving party

must then go beyond the pleadings and designate "specific facts showing that there is a genuine

issue for trial."  *Id.* at 324.  Conclusory allegations, speculation, unsubstantiated assertions, and

legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for

trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

III.    Analysis

Robinson claims that she suffered sexual harassment, retaliation, and sex-based discrimination. Such claims are routinely pursued under Title VII of the Civil Rights Act of 1964, but Plaintiff chose instead to bring each claim under § 1983. Section 1983 precludes deprivation of a right "secured by the Constitution and the laws" of the United States by a person acting under color of state law. *Daniel v. Ferguson*, 839 F.2d 1124, 1128 (5th Cir. 1988); *see* 42 U.S.C. § 1983 (2006). In this case, Robinson hinges all of her claims on alleged violation of the Equal Protection Clause, which essentially directs "that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). JPS and Coleman jointly seek summary judgment as to Robinson's claims. In some instances, their arguments merge and will be treated collectively. Individualized treatment is provided where appropriate.

A.      Sexual Harassment

Robinson alleges that her supervisor, Defendant Coleman, created a hostile working environment by constantly using offensive and profane language and by making repeated

graphic sexual overtures to females in the workplace. Sexual harassment violates the Equal

Protection Clause and is actionable under § 1983. *See Lauderdale v. Tex. Dep't of Criminal

Justice, Inst. Div.*, 512 F.3d 157 (5th Cir. 2007).

Defendants raise three arguments in support of their motion for summary judgment as to

Robinson's sexual harassment/hostile working environment claim: (1) the claim is time-barred;

(2) the alleged harassment was not because of sex; and (3) JPS is not vicariously liable under §

1983.

       1.     Statute of Limitations

In their initial memorandum, Defendants primarily argued that Robinson's § 1983

sexual-harassment claim is time-barred because all sexual harassment ended more than three

years before Robinson filed suit. Section 1983 does not contain a statute of limitations and

therefore borrows the law of the forum court. *Cruz v. La. ex rel. Dep't of Pub. Safety & Corr.*,

528 F.3d 375, 378 (5th Cir. 2008). "The relevant limitations period in Mississippi is three years

from the day the cause of action accrues." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir.

2007); Miss. Code Ann. § 15-1-49 (2003). The accrual date for a § 1983 action is based on

federal law and "begins to run the moment the plaintiff becomes aware that he has suffered an

injury or has sufficient information to know that he has been injured." *Piotrowski v. City of

Hous.*, 51 F.3d 512, 516 (5th Cir. 1995) (citations and punctuation omitted). But a continuing

violation will be timely as long as the plaintiff shows "a series of related acts, one or more of

which falls within the limitations period." *Messer v. Meno*, 130 F.3d 130, 134–135 (5th Cir.

1997); *Turner v. Moxon*, 5 F.3d 1496, *3 (5th Cir. 1993) (unpublished table decision)

(discussing continuing violations in § 1983 context).

In *National Railroad Passenger Corp. v. Morgan*, the Supreme Court observed that claims of hostile working environment are continuing in nature.  536 U.S. 101, 116 (2002). Thus, a plaintiff may sue for actions occurring outside the statutory period "so long as an act contributing to that hostile environment takes place within the statutory time period."  *Id*. at 117. The Court then held that Morgan's hostile working environment claim was not barred where the same managers made similar harassing statements before and after the limitations period.  *Id*. at 121.[1]

In the present case, Robinson filed suit on February 29, 2008, so any conduct contributing to a hostile working environment after February 29, 2005, would allow her to pursue her claim.  As Defendants note, Robinson provided a declaration during the investigation of Carter's complaint in which she stated that "Mr. Coleman's sexual comments and profane language stopped in January of 2005" (before the prescriptive period).  *See* Defs.' Mot. Summ. J. [34] Ex. 14, Robinson Decl. ¶ 6.  But during her deposition, Robinson explained that her statement was limited to sexual harassment directed toward her and that Coleman's offensive language and derogatory comments about female employees continued until her termination in March 2005.  The declaration itself references an incident that appears to have occurred after January 2005 in which Coleman allegedly confronted Robinson and another woman and asked "what are you and that little bitch talking about."  *Id*. ¶ 10.  Robinson also provided Carter's

---

[1]*Morgan* is a Title VII case, but § 1983 and Title VII are "parallel causes of action." *Cervantez v. Bexar Cnty. Civil Serv. Comm'n*, 99 F.3d 730, 734 (5th Cir. 1996).  Moreover, the Fifth Circuit has applied *Morgan* in other contexts, including § 1981—another cause of action that is parallel to Title VII.  *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 280 (5th Cir. 2004); *see also O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006) (joining Sixth, Seventh, and Ninth Circuits in applying *Morgan* to § 1983 cases).

deposition testimony that Coleman used offensive language after January 2005.  The summary judgment standard precludes credibility determinations and weighing of the evidence.  *Reeves*, 530 U.S. at 150.  The Court finds that a question of fact exists as to whether acts supporting the sexual harassment claim occurred after January 2005.  Thus the claim survives the timeliness challenge.[2]

2.      Alleged Harassment was Because of Robinson's Sex

In their Reply, Defendants contend that the sexual harassment claim fails because Coleman's alleged conduct was not based on sex.  Reply [45] at 3.  As an initial point, this argument was not raised until rebuttal, and "[i]t is the practice of . . . the district courts to refuse to consider arguments raised for the first time in reply briefs."  *Gillaspy v. Dall. Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008) (citation omitted).

Regardless, a question of fact exists as to whether Coleman's alleged conduct constitutes actionable discrimination.  Defendants' acknowledge that Coleman made inappropriate comments, but describe the acts as "sexually tinged."  Reply [45] at 3.  If that were the case, then Defendants might have a point because "sexual harassment is discrimination based on sex, not merely workplace behavior with sexual overtones."  *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 268 (5th Cir. 1998).  Indeed, a "core component of [hostile work environment] harassment is conduct designed to undermine a woman's competence."  *Id.* at 270 (citation omitted).  But Defendants' polite description sanitizes Coleman's alleged conduct.  According to Robinson,

---

[2]Robinson also suggests that the drug test and the termination of her employment were acts of sexual harassment within the limitations period.  Discrete acts will not revive prior claims.  *Morgan*, 536 U.S. at 105.  But there is no need to reach this issue in light of the alleged sexual harassment after January 2005.

Coleman routinely referred to the women in the office as "whores," "bitches," and other offensive monikers.  She also presented record evidence that he routinely commented on their bodies in a sexual way and would graphically described various sex acts he wished to perform on his female subordinates.  *See generally* Pl.'s Response [39] at 4-6.  There is no indication that Coleman commented on the men's bodies or expressed desire to perform sex acts on them.  Robinson has created a question of fact as to whether this alleged conduct was because of sex.  Thus, Defendants' argument would fail even if timely asserted.[3]

### 3.   Whether JPS is Liable

JPS contends that Robinson has failed to establish the necessary elements of municipal liability as to the claim of sexual harassment under § 1983.[4]  "[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom."  *Piotrowski*, 237 F.3d at 578 (*citing Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  This is so because no respondeat superior liability exists under § 1983.  *Id.*  "Consequently, the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability."  *Id.*

---

[3]Robinson argues that Coleman is not entitled to qualified immunity for the sexual harassment claim.  It does not appear that Coleman asserted the defense as to the sexual harassment claim, but if he did, it would fail.  *See Lauderdale*, 512 F.3d at 166–67  (citations omitted) ("[Q]ualified immunity can never offer protection for sexual harassment because, if it is actionable at all, the harassment is by definition objectively offensive and unreasonable, and qualified immunity protects only the 'objectively reasonable.'").

[4]Although the Court will not generally hear arguments raised initially in reply, this argument is at least suggested in Defendants' original memorandum, and Robinson squarely addresses it in response.  There is no surprise, and the matter is properly before the Court.

In this case, there are no JPS adopted policies to consider, but "official policy" also includes:

> A persistent, widespread practice of [government entity] officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents [government entity] policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the [government entity] or to an official to whom that body had delegated policy-making authority.

*Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam); *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir.1984) (en banc) (per curiam), *cert. denied*, 472 U.S. 1016 (1985).

Robinson contends that JPS had a custom, policy and practice of tolerating sexual harassment within the Safety and Security Department which was the moving force behind the violation of her equal-protection rights. She further suggests two potential policymakers. First, Plaintiff contends that Coleman was a policymaker. Second, she posits that the school district itself had constructive knowledge of Coleman's alleged conduct. The Court will focus on the second position.

Constructive knowledge exists "if through the exercise of reasonable care [an employer] should have known what was going on but failed to address it." *Sharp v. City of Houston*, 164 F.3d 923, 930 (5th Cir. 1999). "Whether an employer may be charged with constructive knowledge is, within certain legal constraints, a question of fact." *Id.*

In the present case, Robinson submitted sufficient record evidence for a jury to find that Coleman's alleged conduct persisted for more than four years, his conduct was pervasive, open, and widely known within the Safety and Security Department, JPS failed to implement adequate procedures to prevent sexual harassment, and JPS further failed to train Coleman and other

employees regarding sexual harassment.  Moreover, co-worker Sonia Carter testified that she

informed JPS's legal counsel JoAnne Shepherd "between 2000 — 2003 and 2005" that Coleman

"would say things to women and people in the department that was [sic] not right.  It was

uncomfortable."  Pl.'s Resp. [38] Ex. 1, Carter Dep. 29:8-25.  According to JPS, Sheperd was

responsible for handling the internal investigation of Carter's claims, but the investigation did

not begin until 2004.  All of these alleged facts, if believed, would allow a reasonable jury to

conclude that JPS "knew or should have known" of the hostile working environment Robinson

alleges and failed to address it.  *See Sharp*, 164 F.3d at 930 (affirming jury verdict based on

similar facts).  Dismissal of JPS is not appropriate.

  B.  Retaliation

  Robinson claims that after she participated in the Carter investigation, Defendants

retaliated against her by placing her on the Random Test List, testing her, and terminating her

employment.  Workplace retaliation finds a natural home in Title VII, and perhaps under the

First Amendment, but Robinson filed no such claims.  Instead, she brought the claim under §

1983 for alleged violation of the Equal Protection Clause.  But the Equal Protection Clause does

not preclude workplace retaliation.  *Teigen v. Renfrow*, 511 F.3d 1072, 1086 (10th Cir. 2007)

("The mere illegality of a retaliatory action under a separate body of law does not make the

resulting classification so illegitimate, irrational, or arbitrary as to violate the Equal Protection

Clause"); *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996) ("[W]e know of no court that has

recognized a claim under the equal protection clause for retaliation following complaints of

racial discrimination."); *Ratliff v. DeKalb Cnty., Ga.*, 62 F.3d 338, 340 (11th Cir. 1995)

(reversing and holding that "no established right exists under the equal protection clause to be free from retaliation").  The claim therefore fails as to both Defendants.

The retaliation claim against Coleman falls short for two additional reasons.  First, "[t]here is no vicarious or respondeat superior liability of supervisors under § 1983." *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006).  Thus, to establish liability against a supervisor under § 1983, "[a] plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation." *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) (citing *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999)).

Here, Robinson baldly asserts that Coleman placed her on the Random Test List, selected her for testing, and terminated her employment, but she offers no competent supporting evidence on this point.  Robinson's speculation, no matter how heartfelt, fails to create a genuine issue for trial.  *TIG Ins. Co.*, 276 F.3d at 759 (holding that speculation and unsubstantiated assertions will not create a genuine issue for trial); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (holding that an employee's subjective belief of discrimination is not sufficient to defeat summary judgment).

Second, the retaliation claim fails as to Coleman in his individual capacity even if he made the disputed decisions, and even if an argument could be made that the Equal Protection Clause applies, because such a right is not "clearly established" under the Equal Protection Clause.  Qualified immunity therefore exists.  *Wallace v. Cnty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005) (citing *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998) (en banc)).  There are no claims against Coleman in his official capacity.

10

C.     Sex Discrimination

Robinson premises her § 1983 sex-discrimination claim on three actions: (1) the placement of her name on the Random Test List; (2) the subsequent drug test; and (3) the termination of her employment without the opportunity to participate in JPS's Employee Assistance Program.

1.     Placement on the Random Test List

In addition to the claimed retaliation, Robinson asserts that she was placed on the Random Test List because she is a woman.  She neglects, however, to support this assertion with any record evidence, and her conjecture fails to create a triable issue.  *TIG Ins. Co.*, 276 F.3d at 759 (holding that speculation and unsubstantiated assertions will not create a genuine issue for trial); *Clark v. Owens*, 371 F. App'x 553, 554 (5th Cir. 2010) (holding that plaintiff's "conclusory assertions that he was treated differently than other[s] similarly situated . . . are insufficient to state an equal protection claim").

Instead, the record is undisputed that JPS added every employee in Robinson's department to the Random Test List—men and women alike.  "[I]f the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action . . . does not deny them equal protection of the laws."  *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997); *see also White v. Kaylo*, 264 F. App'x 402, 403 (5th Cir. 2008) ("And because the record contains no evidence that White was treated differently than similarly-situated prisoners in administrative segregation, his equal protection claim must fail.").

The Fifth Circuit considered a similar set of facts in *Hampton Co. National Surety v. Tunica County, Mississippi*, where white bail bondsmen claimed that a sheriff removed them

from an approved list in violation of their right to equal protection.  543 F.3d 221, 228–29 (5th

Cir. 2008).  The Fifth Circuit disagreed, holding that because it was "undisputed that both white

and black bail bondsmen were removed from the approved list at the same time [for same the

reason] the Plaintiffs cannot show divergent treatment of similarly situated white and black

individuals with regard to the initial removal."  *Id*.  Placement on the Random Test List fails to

demonstrate an equal protection violation as to either defendant.

        2.      Drug Testing

As for Robinson's selection as a test subject, she again speculates that her gender was a

motivating factor.  But the record is undisputed that an independent third-party randomly

decided which eligible employees would be tested.  Also, Robinson's own evidence shows that

men were routinely selected for random testing.  Again, unsupported conjecture is of no moment,

and the facts fail to demonstrate that Robinson was treated differently than similarly situated

males when she was randomly selected for drug testing.  *Id*.

        3.      Termination of Employment

Robinson claims that Defendants terminated her employment for testing positive,

whereas male workers were allowed to participate in the Employee Assistance Program and were

not immediately terminated.  The parties dispute two issues with respect to this claim:  (1)

whether Robinson was treated differently than similarly situated male employees; and (2)

whether JPS is liable for the decision.  Robinson pays far greater attention to the former but still

fails to create a question of fact.

"[I]n order for a plaintiff to show disparate treatment, she must demonstrate 'that the

misconduct for which she was discharged was nearly identical to that engaged in by an employee

not within her protected class whom the company retained.'" *Wallace v. Methodist Hosp. Sys.*,
271 F.3d 212, 221 (5th Cir. 2001) (citation and punctuation omitted).  In this regard, "the
conduct at issue is not nearly identical when the difference between the plaintiff's conduct and
that of those alleged to be similarly situated accounts for the difference in treatment received
from the employer." *Id.*; *see also Knatt v. Hosp. Serv. Dist. No. 1 of E. Baton Rouge Parish*, 327
F. App'x 472, 482 (5th Cir. 2009) (noting that substantially-similar test in *Wallace* applies in
equal-protection context).  In *Lee v. Kansas City South Railway. Co.*, the Fifth Circuit explained
how exacting this standard can be:

> Employees with different supervisors, who work for different divisions of a
> company or who were the subject of adverse employment actions too remote in
> time from that taken against the plaintiff generally will not be deemed similarly
> situated.  Likewise, employees who have different work responsibilities or who
> are subjected to adverse employment action for dissimilar violations are not
> similarly situated.  This is because we require that an employee who proffers a
> fellow employee as a comparator demonstrate that the employment actions at
> issue were taken "under nearly identical circumstances."  The employment
> actions being compared will be deemed to have been taken under nearly identical
> circumstances when the employees being compared held the same job or
> responsibilities, shared the same supervisor or had their employment status
> determined by the same person, and have essentially comparable violation
> histories.  And, critically, the plaintiff's conduct that drew the adverse
> employment decision must have been "nearly identical" to that of the proffered
> comparator who allegedly drew dissimilar employment decisions.

574 F.3d 253, 259–60 (5th Cir. 2009) (citations omitted).

In the present case, Robinson identified eight male employees who, according to her,
were allowed to enter the Employee Assistance Program before they were fired or forced to
resign.  Her testimony suggests that some of these men tested positive during random drug tests,
whereas others came to JPS's attention due to DUI charges.  According to Robinson, JPS should
have allowed her to enter the drug assistance program like the men.

13

The record in this case addresses few of the considerations in cases such as *Lee*. But based on the submissions, the Court initially holds that those men who received DUIs were not similarly situated because they did not test positive for drugs on the job. Additional considerations contrast all of the purported comparators from Robinson. First, it appears that the men worked under different supervision. *See* Pl.'s Resp. [38] Ex. 5, Coleman Dep.70:20-719. Second, JPS denied Robinson's request for treatment because she informed the district that the results of the testing were false and that she did not take drugs. There is no indication that the comparators denied test results, and the denial begs the question why she would need drug treatment. It also invites inquiry into her veracity. Third, unlike the comparators, Robinson was the Office Manager for the Safety and Security Department and was responsible for coordinating the drug testing program for the entire school district. Her position was not substantially similar to the comparators. Fourth, Robinson apparently abandoned the internal appeal process, and there is no indication whether the men went through that process. Finally, her contention is further undermined by the unrebutted evidence that a male employee identified as "WL" was forced to resign following an irregular drug test. *Id*. Under the circumstances, the evidence fails to show an equal-protection violation. In sum, Plaintiff's sex-discrimination claims should be dismissed.[5]

---

[5]Defendants offered other individualized arguments that were likewise persuasive as to the sex-discrimination claims. First, Coleman's individual defenses to the retaliation claim addressed in § III.B. apply equally here. Second, as for JPS, even assuming a constitutional violation, Plaintiff has not presented sufficient record evidence to create a genuine issue of material fact as to the elements of municipal liability under § 1983. *Piotrowski*, 237 F.3d at 578.

IV.     Conclusion

Defendants' Motion for Summary Judgment [34] is denied as to Robinson's sexual harassment claim but otherwise granted.  Robinson's Motion to Strike [41], which challenges the authentication of Defendants' supporting evidence, is denied because Defendants authenticated the exhibits before this Court ruled and Robinson suffered no prejudice.

This matter is further set for pre-trial conference on February 4, 2011, and is placed on the Court's trial calendar commencing March 1, 2011.  Finally, the parties are instructed to set a telephonic conference with Magistrate Judge Keith Ball within the next two weeks to determine whether the case is a good candidate for settlement conference.

**SO ORDERED AND ADJUDGED** this the 20th day of January, 2011.

s/ *Daniel P. Jordan III*____
UNITED STATES DISTRICT JUDGE